IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WARREN EASTERLING, | : | |
| | : | Case No. 3:15-CV-257 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| WALTER H. RICE, | : | |
| | : | |
| and | : | |
| | : | |
| JEREMY ROSE, | : | |
| | : | |
| Defendants. | : | |

**OPINION & PLENARY ORDER**

This matter comes before the Court on the following motions: (1) the individual motions of each Defendant to dismiss Plaintiff's *pro se* Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Docs. 23, 24); and (2) Plaintiff's *pro se* Motion for Temporary Injunction pursuant to Fed. R. Civ. P. 65(a) (Doc. 20). For the reasons set forth herein, this Court **GRANTS** each Defendant's Motion to Dismiss and **DENIES** Plaintiff's Motion for Temporary Injunction.

I.  BACKGROUND

A.  **Factual Background**

On August 1, 2014, Defendant the Honorable United States District Judge Walter H. Rice ("Judge Rice" or "Defendant") issued an Order announcing that in an upcoming court filing Plaintiff will be declared a vexatious litigant and ordered not to file any further litigation with that court *in forma pauperis* without the written permission of the Chief Judge of the United States District Court for the Southern District of Ohio (the "Chief Judge"). (Doc. 1-3 at 1).

1

Furthermore, as the result of Plaintiff's recent disruptive conduct with members of the courthouse, Judge Rice barred Plaintiff from entering the United States District Courthouse and Office Complex at 200 West Second Street, Dayton Ohio without prior written permission from the Chief Judge. *Id* at 2. Judge Rice further explained that Plaintiff had alternative means for filing papers with the Court. *Id.*

On August 4, 2014, at the request of Defendant Deputy United States Marshal Jeremy Rose ("Deputy Rose" or "Defendant," collectively with Judge Rice, "Defendants"), members of the United States Marshals Service personally served Plaintiff with notice of the August 1, 2014 Order at 71 Arlington Avenue in Dayton, Ohio. (Doc. 1-6, Exhibit 4, Page ID: 19). Plaintiff informed the Marshals that he would not recognize the court Order as lawful and that he would be present at the courthouse later that day. *Id.* On August 4, 2014, at approximately 11:00 am Plaintiff attempted to gain entry into the United States District Courthouse in violation of the Order. *Id.* Following multiple failed requests from the Marshals for Plaintiff to vacate the premises, and an aggressive manner from Plaintiff, and given that Plaintiff had not yet passed the security checkpoint, Deputy Rose ordered fellow Deputy Marshals to deploy a taser gun on Plaintiff. *Id.* Deputy Lupica deployed his taser, which hit Plaintiff and caused him to fall to the ground whereupon he was immediately arrested. *Id.* On August 7, 2014, Plaintiff was released from custody and ordered to obey Judge Rice's August 1, 2014 order prohibiting Plaintiff's entry into the District Courthouse and Office Complex. (Doc. 1-7 Exhibit 5 Page ID: 25-31).

### B. Procedural Background

Plaintiff filed his *pro se* Complaint on July 28, 2015, asserting a claim under 42 U.S. Code § 1985 against both Defendants for conspiring to obstruct justice and depriving Plaintiff of an unspecified right granted to all United States citizens. (Doc. 1). On September 22, 2015,

Plaintiff filed a Motion for Temporary Injunction of the August 1, 2014 order barring his entry from the Dayton Courthouse and for removal of all cases filed by Plaintiff from the personal jurisdiction of Judge Rice. (Doc. 20). On August 5, 2015, Judge Rice filed his instant Motion, i.e. a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to the Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 23). On the same day, Deputy Rose filed his own 12(b)(6) motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 24). All matters have been fully briefed and are ripe for review.

## II.     MOTION TO DISMISS

### A.     Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 664. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 at 555). A pleading that

offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do. *Twombly*, 550 U.S. at 555.

Additionally, it is well-settled that a document filed *pro se* is "to be liberally construed," and that a *pro se* complaint "however inartfully pleaded, must be held to less stringent standards than a formal pleading drafted by lawyers…" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in *pro se* suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### B. Analysis

To state a claim under 42 U.S.C. § 1985, plaintiff must allege that: (1) two or more persons conspired; (2) for the purpose of depriving the plaintiff of the equal protection of the laws due to racial or class-based discrimination animus; (3) an act in furthering such conspiracy; and (4) an injury to the plaintiff resulting from such act. 42 U.S.C. § 1985(3). See also *Webb v. United States*, 789 F.3d 647, 671-72 (6th Cir. 2015); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

### III. IMMUNITY

Defendants separately move to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), asserting that: (1) Defendants, individually, are immune from Plaintiff's claims; and (2) Plaintiff's Complaint fails to state a plausible claim under Title 42 U.S.C. § 1985. Defendants' arguments will be addressed in turn.

### A.     Absolute Immunity

Judge Rice first argues that Plaintiff's Complaint should be dismissed because Defendant, as a United States district court judge, is entitled to absolute immunity from any claims arising out of acts performed within the scope of his role as a judge. (Doc. 23 at 8).

Judges are granted absolute immunity from liability for acts they commit within their judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity can be overcome in only two instances. *Id*. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*. at 11-12 (internal citations omitted). In the absence of either exception, judicial immunity will apply, even if a judge acts "erroneously, corruptly, or in excess of jurisdiction." *King v. Love*, 776 F.2d 962, 965 (6th Cir. 1985). "Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*¸ 105 F.3d 1111, 1116 (6th Cir. 1997) (quoting *Mireles*, 502 U.S. at 13) (internal quotation marks omitted). In determining whether an act is judicial, the court looks to: (1) "the nature of the act itself, whether the act is a 'function normally performed by a judge'"; and (2) "whether the parties 'dealt with the judge in his judicial capacity.'" *Id*. (quoting *Mireles*, 502 U.S. at 13).

Plaintiff's allegations in the present case relate only to actions that Defendant undertook in his official capacity as Judge for the United States District Court for the Southern District of Ohio. Defendant's Order barring Plaintiff from the federal courthouse in Dayton was a judicial act made pursuant to his role as a judge. *See Feathers v. Chevron U.S.A.*, 141 F3d 264, 269 (6th Cir. 1998) (finding that there is "nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."). As in *Feathers*, Judge Rice placed prefiling

restrictions on Plaintiff because of his filing cases that were "too numerous to mention" against public officials each of which had been dismissed for "multiplicity of reasons." (Doc. 1-3, Exhibit 1, Page ID: 12). This Court further finds that Plaintiff dealt with the defendant in his judicial capacity. See *Doc.* 1 (Plaintiff contends that defendant Rice "us[ed] the power vested in him by the United States Court" to issue the order). This Court concludes that Judge Rice was acting in his judicial capacity for all misconduct alleged by Plaintiff and is therefore absolutely immune from Plaintiff's claims.

### B. Qualified Immunity

Deputy Rose argues that Plaintiff's Complaint should be dismissed on the basis of qualified immunity. Government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official asserting a qualified immunity defense needs demonstrate only that a reasonable officer could have believed the alleged action was lawful, "in light of clearly established law" and the information the officer possesses at the time of the action. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In his Order barring Plaintiff from the federal courthouse, Judge Rice specified the consequences for any violation of the order: "Should [Plaintiff] attempt to enter those premises, without said written permission, he is to be immediately detained and arrested, by those with the authority to detain and arrest, and prosecuted for criminal trespass." (Doc.1-3 Exhibit 1 page 3, Page ID #13). Copies of the Order were distributed to various court personnel, including the United States Marshals Service, of which Deputy Rose is an officer. The primary role of the United States Marshals Service is "to provide for the security and to obey, execute, and enforce

all orders of the United States District Courts, the United States Courts of Appeals and the Court of International Trade." 28 U.S.C. § 566. The task of detaining and arresting Plaintiff for violations of the Order then lie squarely within the purview of the United States Marshals Service. The Court finds that it was reasonable for Deputy Rose, as a member of the Marshals Service, to believe that fulfilling his obligation in arresting Plaintiff during the August 4, 2014 incident was a lawful action in light of the established law specifying his duties as a Marshal and the information contained in the Order. Therefore, Deputy Rose satisfies the requirements of qualified immunity and is immune from Plaintiff's claims.

## IV. MOTION FOR TEMPORARY INJUNCTION

To determine whether a party is entitled to an injunction under Fed.R.Civ.P. 65(a), the Court must weigh four factors: (1) the likelihood that the movant will succeed on the merits of the claim; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether issuance of the injunction is in the public interest. *Tumblebus Inc. v. Cranmer,* 399 F.3d 754, 760 (6th Cir. 2005). These factors are not prerequisites that must be met; no one factor is dispositive. *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994). Rather, the Court must balance the factors in determining whether to grant injunctive relief. *In re Delorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985). The Court finds that the relevant factors weigh in favor of denying Plaintiff's Motion.

### A. Likelihood of Success

For the reasons set forth in sections II and III of this Opinion, Plaintiff fails to state a claim as a matter of law. Thus, the Plaintiff fails to demonstrate that he is likely to succeed on the merits of his claim.

7

### B.  Irreparable Harm

Plaintiff cannot demonstrate that he will suffer irreparable harm if injunctive relief is not granted. The harm cited by Plaintiff's is intimidation and the risk of bodily harm or arrest if he attempts to enter the courthouse. There is no certainty that such harm will occur, and it is wholly within Plaintiff's discretion whether or not to obey the court order forbidding his entry. Further, Plaintiff has failed to demonstrate any necessity to enter the courthouse and thereby violate the court Order. The possibility that Plaintiff could suffer harm for violating the Order is not enough, alone, to demonstrate irreparable harm for the purposes of injunctive relief.

### C.  Substantial Harm to Others

The third factor that the Court must consider is whether the issuance of the requested injunction will cause substantial harm. In considering this factor, the Court must "(1) balance the harm Plaintiff would suffer if its request for a preliminary injunction were denied against the harm Defendants would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Rest. Adver. Group, Inc. v. J.P. Morgan Chase & Co.,* No. 2:04-cv-1020, 2005 U.S. Dist. LEXIS 47845, 2005 WL 6736847, at *11 (S.D. Ohio Feb. 11, 2005). Combining Plaintiff's admittance in his Motion that there is no risk of substantial harm to others, Doc. 20 at 9, with the Court's finding of a lack of irreparable harm to Plaintiff himself, the Court is left considering only the impact on third parties. The August 1, 2014 Order barring Plaintiff's entry to the courthouse was the result, in part, of Plaintiff's increasingly disruptive behavior to members of the court during his courthouse visits. (Doc. 1-3 at 2). It is likely that such behavior would reoccur if injunctive relief were granted and the Order lifted. Therefore, this factor weighs in favor of denying Plaintiff's Motion.

### D.     Public Interest

Granting Plaintiff's Motion would not serve the public interest. The Order from which Plaintiff seeks relief was issued by a competent court after reasonable attempts to accommodate Plaintiff in his interactions with court staff.

### E.     Balancing of the Factors

The likelihood of success on the merits weighs strongly in favor of denying injunctive relief. *Gonzales v. National Bd. of Med. Eam'rs,* 225 F.3d 620, 625 (6th Cir. 2000) ("although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). Additionally, Plaintiff has failed to show that irreparable harm will result, there is a risk of harm to others, and the public interest would not be served in granting the Motion. Therefore, Plaintiff's Motion for Temporary Injunction is **DENIED**.

## V.     CONCLUSION

Defendants' Motions to Dismiss are **GRANTED**, and Plaintiff's Motion for Temporary Injunction is  **DENIED**.  This case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

     /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  February 22, 2016**